THE STATE OF NORTH DAKOTA, ex rel. VADNAIS, v. L. L. STAIR, Warden of the State's Penitentiary.

(185 N. W. 301.)

**Criminal law — habeas corpus—writ may be invoked by prisoner unlawfully restrained of liberty while on probation.**

    1. A person who has been placed on probation under a suspended sentence cannot be deprived of the liberty thus granted except in pursuance of the laws in such cases made and provided; and in case he is deprived of his liberty in violation of the rights and benefits thus conferred upon him, he may properly invoke the Writ of Habeas Corpus.

**Habeas corpus — probationed prisoner, wrongly deprived of his liberty, may show that Board of Experts found that he had not violated its rules.**

    2. In case of his arrest and incarceration, such person may show on habeas corpus that the Board of Experts, the board under whose jurisdiction such persons are placed, have at no time found that he has violated any of the rules and regulations prescribed for probationers, but on the other hand have found that he did not violate such rules and regulations; that he has not, in fact, violated any of such rules and regulations; and that the Board of Experts have never terminated the probation.

Application by the State on the relation of W. E. Vadnais for a writ of habeas corpus to L. L. Stair, Warden of the State's Penitentiary.

Granted.

Per Curiam Opinion.

*Wm. Langer & E. T. Burke,* for petitioner.

*Olaf Braatelien,* States Attorney of Divide County and *W. A. Anderson,* Assistant Attorney General, for respondent.

PER CURIAM. This is an original application for a writ of habeas corpus which was presented to this court after a denial of the application by Judge Nuessle, one of the judges of the Fourth judicial district. It appears from the petition that on the 18th day of January, 1921, the relator, Vadnais, was sentenced by the district court of Divide county to imprisonment in the state penitentiary for a term of five years, on a charge that he, while county auditor of such county, had falsified public records; that the execution of such sentence was suspended by the district

court which imposed it, and the defendant placed on probation; that thereafter the relator obtained employment, and in all other things complied with the rules and regulations applicable to persons placed on probation; that thereafter the state's attorney of said county notified the Warden of the State Penitentiary that he wished the relator interned in the penitentiary; that thereafter a field officer of the penitentiary took the relator in custody; that since on or about March 10, 1921, the relator has been detained in the penitentiary; that he has never in any respect violated any of the rules or regulations of the Board of Experts; that the Board of Experts has at no time terminated the probation, nor has the district court which imposed the sentence in any manner revoked or set aside the order of suspension. A hearing was had before this court at which the records of the Board of Experts were produced and offered in evidence, and the members of such board, including the Warden of the State Penitentiary and other witnesses, were sworn and testified orally. From the records and such oral testimony it appears, without contradiction, that the relator has in no manner violated any of the rules or regulations of the Board of Experts, and that the Board of Experts has never so determined. On the contrary it appears that after a hearing had the Board of Experts arrived at the conclusion that the relator had not violated any of the rules and regulations applicable to persons on probation. It appears further that at such meeting the state's attorney appeared and made the charge that before the sentence was passed upon the relator, an attorney who represented the relator in such criminal case agreed with the state's attorney that in the event sentence was suspended the relator would assist the state's attorney in correcting "the public records of such county, and to help rid the public records of such county of all defalcation and crime," and said state's attorney claimed that the relator had failed to comply with this agreement. As already stated, the Board of Experts, after hearing the charges of the state's attorney, decided that the relator had not violated any of the conditions imposed upon him as a probationer; but, in view of the attitude of the state's attorney, they adopted a resolution that the relator be not released from custody until the state's attorney recommended that he be released. The state's attorney reiterated the same charge before this court which he made before the Board of Experts. He was sworn and examined as a witness upon the hearing before us. It appears from his testimony that, after the suspension of the sentence,

the relator came to the state's attorney's office, and that for some reason it was deemed necessary to have a conference at some other time, and that the state's attorney made an appointment to have the relator call at some subsequent date, and that the relator failed to appear at the time of such appointment. This is the only tangible proposition presented by the state's attorney.

The statute provides:

"In all prosecutions for crime, except as hereinafter provided, where the defendant has pleaded or been found guilty, and where the court or magistrate has power to sentence such defendant to the penitentiary, and it appears that the defendant has never before been imprisoned for crime, either in this state or elsewhere (but detention in an institution for juvenile delinquents shall not be considered imprisonment), and where it appears to the satisfaction of the court or magistrate that the character of the defendant and circumstances of the case are such that he is not likely again to engage in an offensive course of conduct, and where it may appear that the public good does not demand or require that the defendant shall suffer the penalty imposed by law, said court or magistrate may suspend the execution of the sentence, and place the defendant on probation in the manner hereinafter provided." § 10950, C. L. 1913.

"Whenever a sentence to the penitentiary has been imposed, but the execution thereof has been suspended and the defendant placed on probation, the effect of such order shall be to place said defendant under the control and management of the board of trustees of the penitentiary, and he shall be subject to the same rules and regulations as apply to persons paroled from the penitentiary after a period of imprisonment therein." § 10952, C. L. 1913.

"Whenever it is the judgment of the court that the defendant be placed upon probation, and under the supervision of the penitentiary, it shall be the immediate duty of the clerk of the said court to make a full copy of the judgment of the court, with the order for the suspension of the execution of the sentence thereunder, and the reasons therefor, and to certify the same to the warden of the penitentiary, to which the court would have committed the defendant but for the suspension of the sentence. Upon entry in the records of the court of the order for such probation, the defendants shall be released from custody of the court as soon as the requirements and conditions of the board of trustees

of the penitentiary have been properly and fully met." § 10954, C. L. 1913.

"Whenever a person placed upon probation, as aforesaid, does not conduct himself in accordance with the rules and regulations of the institution in whose charge he has been placed, the field officer thereof may, without warrant or other process, arrest said person and convey him to said institution, and the board of trustees of the penitentiary may, after a full investigation and a personal hearing, because of such conduct, forthwith terminate the probation and cause said person to suffer the penalty of the sentence previously suspended. Any person under probation who has violated the conditions of his probation shall, under order of the board of trustees of the penitentiary, be subject to arrest in the same manner as in the case of an escaped convict. In all such cases of termination of probation, the original sentence shall be considered as beginning upon the first day of imprisonment in the institution." § 10956, C. L. 1913.

"A member of the State Board of Control, chosen and designated by said board, the Warden of the State Penitentiary, the prison physician, a chaplain of the State Penitentiary, and one other person to be chosen as a member at large by the State Board of Control shall constitute the Board of Experts whose duty it shall be to pass upon the application for discharge of the inmates of the penitentiary, who may have been sentenced under the indeterminate sentence law, and also to pass upon the applications of the inmates of the penitentiary, who may make application to be paroled as provided by law. The State Board of Control shall elect one of its members as well as the member at large to sit upon the Board of Experts at their first meeting in April and thereafter at the April meeting in each odd-numbered year. The terms of these members of the Board of Experts shall be two years, commencing immediately after the April meeting of the Board of Control in the odd-numbered years. The State Board of Control of state institutions shall certify to the Governor and the State Auditor, the names of the members selected by them to act as members of the Board of Experts as soon as they are elected and have qualified as members thereof. The Board of Experts shall determine and fix the date when an inmate may be paroled or discharged, and shall keep a complete record of all the findings and orders of the board. It shall be the duty of the Board of Experts to provide blanks to record applications and to formulate rules and regu-

lations governing the conduct of the inmates applying for a parole and the manner in which they may become eligible for discharge or parole. It shall also be the duty of the Board of Experts to meet once in each month and to keep a complete record of all the inmates discharged or paroled by them and to make a biennial report to the State Board of Control of all inmates paroled who have been discharged, and statistics pertaining thereto." Chap. 233, Laws 1915.

In this case there is no question but that the sentence passed upon the relator was suspended, and he placed upon probation under the applicable statutory provisions. Nor is there any question but that he complied with the requirements and conditions of the Board of Experts. It is contended by the attorney for the respondent in this case that a person who has been paroled or placed on probation has no civil rights, that he still remains a convicted felon, and that he is not entitled to invoke the writ of habeas corpus. In our judgment this argument is wholly unsound. Manifestly when a sentence is suspended and the defendant placed on probation upon certain conditions, and subject to certain rules and regulations, certain obligations are placed or imposed upon the party so placed on probation, and incidentally certain rights or privileges are vested in or conferred upon him. See Church on Habeas Corpus 2d ed. §§ 458-458e. On the one hand if he violates the conditions the probation may be terminated and the sentence which has been suspended be enforced. On the other hand if the person who has been so placed on probation continues in good faith to comply with the conditions imposed he is certainly entitled to enjoy the rights and privileges which have been thus conferred upon him. It will be noted that our laws specifically provide that the probation may be terminated only "after a full investigation and a personal hearing." (§ 10956 C. L. 1913). And the Board of Experts is required to "keep a complete record of all the findings and orders of the Board." Chap. 233 Laws 1915. In this case the evidence is undisputed that the Board of Experts have not found that the relator has violated any of the rules or regulations of the board of experts, nor has any order been entered directing the probation to be terminated. On the contrary the members of the Board of Experts specifically testified that it had not been shown to them that the relator had violated any of the rules or regulations under which he was at liberty; that they had not so found, and that on the contrary whatever finding

they had made was to the effect that he had not violated such rules or regulations.

The writ of habeas corpus is the great writ of liberty. No human being ever sinks so low that he or she may not in the proper case apply to the courts of this land for and obtain the benefits of this great writ. Manifestly, if such writ does not lie in a case like this then a person whom the district court has placed on probation under the rules and regulations established by the Board of Experts may be deprived of such liberty and freedom even though he has not in the slightest particular violated any of the conditions imposed upon him. But it seems well settled that the writ of habeas corpus will lie in behalf of a person who has been wrongfully deprived of the liberty which he enjoys under a parole or a suspended sentence. In Ruling Case Law, it is said: "Questions involving the nature of pardons sometimes arise in habeas corpus proceedings. A pardon is frequently conditional, as the executive may extend his mercy on what terms he pleases, and annex to his bounty a condition subsequent or precedent on the performance of which the validity of the pardon will depend. If the convict does not perform the condition of the pardon, it will be altogether void, and he may be brought to the bar and remanded to suffer the punishment to which he was originally sentenced. The question whether there has been a violation of, or non-compliance with, the condition or conditions of a pardon may be investigated and determined in habeas corpus proceedings brought by the convict himself to test the validity of his arrest and detention for an alleged violation of the conditions. Likewise, the court may inquire into the validity of a pardon which the governor attempted to revoke. One who has been released on parole may on rearrest for violation of conditions show on habeas corpus that he has performed the conditions, or that he has a legal excuse for not having done so." (12 R. C. L. 1244.) See, also, Church on Habeas Corpus, §§ 458-458e. The cases cited in support of the text fully sustain the principles so announced.

It is our opinion that the petitioner is unlawfully restrained of his liberty by the respondent, and that he is entitled to a discharge from the imprisonment of which he complains, and he is therefore ordered discharged therefrom. It is of course understood that this release leaves the petitioner in all things subject to the conditions imposed upon him as a probationer.

ROBINSON, CHRISTIANSON, BIRDZELL, and BRONSON, JJ., concur.

GRACE, C. J., concurs in the result.